Thank you. We ask counsel for each side to step up briefly, introduce yourselves, and tell us who you represent. Arthur Rosenson, on behalf of the plaintiffs. Good afternoon, your honors. Corey Hickman, on behalf of Allstate Insurance Company. All right. Thank you, counsel. Mr. Hickman, you can be seated. Mr. Rosenson, bring your things up there. And we'll recognize both sides that we have read the briefs. We are familiar with the issues. You don't need to repeat things that are already in the record to us. Please keep your arguments focused on your most important points. Also, we'll give each side about 20 minutes. We'll give a few minutes for rebuttal. We may change that if things get repetitive or if we have a lot of questions. Thank you. Thank you. Good afternoon. Let's assume, hypothetically, that Buddy Slay ran an independent Allstate agency that was a disaster. He didn't have a license. He wasn't qualified, etc. In that scenario, there would be no issue that there was no violation of the covenant of good faith and fair dealing by Allstate exercising its discretion in not approving the sale. Let's also assume that in the manual that was attached to the motion to dismiss, there had been a sentence that absolutely barred the transfer of Mary Slay's insurance business to her husband's agency because it was an independent agency, not an exclusive agency. And while that's not the case, because there's an exception in the manual that states that where the member of the independent agency is a spouse of the selling member, it's permissible. But let's leave that out for now. In the event that that type of a transfer would have been barred again, there could be no breach of the covenant of good faith and fair dealing. Why? Because how could the plaintiff ever have had a reasonable expectation that they could transfer the agency to the husband if the manual itself barred it unconditionally? But neither of those two... But Mr. Rosenstein, there is also language in the agreement that says, and I'll read it to you, the company, in all state, retains the right in its exclusive judgment to approve or disapprove such a transfer. What does that mean? Well, I would say this. It means that you take that statement, which of course means the words that it states, and then you add it to the application of Illinois law. If the court is going to take the position that when you have unfettered discretion, that literally means it's unfettered. So it doesn't matter if you engage in opportunistic behavior. It doesn't matter if you exercise discretion contrary to the reasonable expectation of the parties. You can do whatever you want. If that is what the court would hold, that would be contrary to prior pressing, because the whole point of the covenant of good faith and fair dealing was to say that when you have a contract that says, you can do whatever you want... So when I'm asking you, what do you think that specific sentence means? What you're telling me is that it doesn't mean anything. No, I would say that you need to have a reason. You cannot be doing it for opportunistic behavior. So if Ray McKnight, or all state, states, here was the reason. Ray McKnight wanted to give the business to Faye McKnight. And so they said that you weren't meeting your production goals, Ms. Slate. We're not going to allow you to transfer it to your husband's business. We're going to take it back and hand it over to my wife's competing business, which was started after you were formed. I would say that notwithstanding that sentence, that is the type of opportunistic behavior, that the covenant of good faith and fair dealing, which is implied. I know it's not expressly in the contract, clearly. But that still gets implied into and has to color how the court views the totality. So I would agree that if you literally only looked at those words, you would say you don't need any reason. And you could have the worst possible reason in the world. But we're going to let you get away with it because you wrote this contract to give you unfettered discretion. So let's skip ahead here. You're really suggesting that there should have been some opportunity for discovery to flesh out some of that. Is that what you're saying? Correct. Because I'm at the pleading stage. We plead all of the facts. And Judge McGrath is an excellent judge. We, everybody, opposing counsel, Judge McGrath, we all understood what was going on here. But I do agree on this fundamental principle that we plead all of the facts in the pleading. We've got the story out there. I can't take discovery. I can't find out, did they disapprove of other transfers to other spouses who were independent agents? Well, I can't speak, of course, with Wayne McNutt. We're not going to take a deposition. We're on a motion to dismiss. So our comment is that we should have the right, based on the facts that were pled, to get to certainly first base, possibly second base. Once discovery occurs, it's conceivable. Maybe they will file a motion for stretchment and say, okay, now we have no genuine issue of material effect. Here's why we made these decisions, the two parts, why it didn't go to Betty Slay, why it did go to Faye McNutt. But your argument is you never got a chance to do that because they acted in a way that precluded that and it was fact-based. Technically, we didn't get a chance to do that because the motion to dismiss was granted. But we would want to get in front of a trial of fact and be able to say, here's the complete story. And now, looking at all of the facts after discovery, make a reasonable application of this principle of the covenant. So, yes, I cannot state unequivocally that I know precisely that certain decisions were made. Had I known so, I would have pled it. But obviously, we're a little bit of a disadvantage. We just know that the story does seem a little bit, whether you want to call it problematic or coincidental, because we know that Betty Slay was an agent for a long time. We know that Faye McNutt is the territory manager's wife and she opened her agency afterwards. So it smells bad. But you're right. At the pleading stage, I believe we have enough and we should have the opportunity to proceed further. The case that was cited, I don't know if there's a lot of dispute. No case can be factually on point because they are all unique. But essentially, the case law is consistent in that the principle of the covenant of good faith that they're doing is what's a recent invention. It is designed for the court to apply when there's unfettered discretion. And so this is that case. That will, of course, occur. And we believe that it's applicable here because of what transpired. Can you speak a little bit about Burrill v. Sayers Roebuck and how this case is different in your view from that? Obviously, this is addressed in the briefs and I won't repeat myself, but I will address it. So in Burrill, two comments. First off, let's make sure we've got the procedural context the same. Motion to dismiss in that case. But there, and I don't know why, there was some discovery. They don't exactly go into it, but they make the statement, and it's worthwhile because of what the court stated, that I know it's here. I will come back to it and I will find that quote. I did not highlight. But there was some modest amount of discovery taken. In that case, the contract of the agent was terminated because she had incurred financial losses. That was the issue. It didn't have to do with the transfer of the interest. And the court stated, well, they've got the right to terminate your contract because of the financial losses. So the factual scenario was different in that there wasn't any sure I had a reasonable expectation that I could operate my business at a loss. Our case is different. We normally had a reasonable expectation that we could sell the economic interest. It's in the documents. The question is the denial of the right. So Burrill was sort of a one step before in a different scenario. If we were here saying that Allstate should not have ever terminated Slay's agreement or contract with Allstate to begin with, then we would be in the same posture with Burrill. But ours is factually distinguishable on that ground. So there isn't any issue with the court making the ruling that it did. The case that we decided, and it's not an insurance case, but I think it's a little bit closer, is the McCleary decision, which is, I'm not going to say it's exactly on point. That would be unfair. But the point that the appellate court made very clear in that decision was that a party, even one who drafted the contract, cannot come in here and state because we have unfettered discretion, you cannot question or exercise the discretion. That had to do with the bonus payment, whether an employee was or was not entitled to it. That's been a fundamental position of Allstate, and it's a very alluring position, but it's not consistent with MRA law. The mere fact, because it's a bootstrap argument, because once you give yourself unfettered discretion, you will never have the covenants of good faith and fair dealing apply because necessarily any discretion would exist. So I think that that more recent decision is more factually on point in discussing the concept of the reasonable expectation of the parties. In Barreau, which is the case that the court mentioned, that didn't come in there. There wasn't any comment that, oh, Barreau thought that she could continue to operate her office indefinitely while losing money hand over fist on behalf of Allstate. That would be kind of a unlikely position for her to take. Mr. Rosenson, you know, it's always a significant chore to try to get around the plain language of contracting, this breach of good faith and fair dealing. You know, we've all dealt with it. In this case, you know, you have an argument that the provision of the EA manual or the E-man has a provision that says the company will consider making an exception to the above limitations based on the facts and circumstances presented. That's a very helpful clause to your side, isn't it? Correct. All right. Now, can you not argue that by Allstate's refusal to grant the transfer of the agency as your client would have liked, that they did, in fact, consider something and they considered it because they rejected it? Well, I think that's I mean, all it requires them to do is consider it. They don't have to give you the answer you want. It just says they have to consider it. Correct. But if they consider it and reject it for a reason, that is, to quote Richard Posner, I know he's not binding on this court, but he's a good writer. I can't help it. In opportunistic behavior, or as Bill O'Ponk would have stated, exercise discretion contradicts the reasonable expectation of the parties. Then, no, they can't get away with it. If they literally said, we considered it, and you know what we decided at the end of our consideration? Ray McKnight runs that territory. That business is going to his wife. It's not going to her husband. That is why we rejected it. Now, do I think he's going to save it? We'll see. I don't know how good of a question of it. But if he said that, which is our best-case scenario, because he's essentially admitting what we believe actually happened, that would be a violation of the covenants of good faith and fair dealing, because they considered it and then rejected it for opportunistic behavior, which was not within the reasonable expectation of the parties. Is it conceivable? Yes, because husbands normally want to do kind things for their spouses, you would think. But is that a reasonable expectation of the parties in a business transaction, that she's going to essentially lose her business to the territory manager's wife rather than having it go to the husband? So I understand what the argument is, but I would – Would the case be different if Allstate had decided to transfer the agency's book of business to someone who wasn't related to anybody? It was just some new person on the street or another agent that had the ability to absorb the business? Yes, that would be different. Would it be dispositive in and of itself? Not necessarily. Because if – remember, step one is we're not giving it to Buddy Slade. Step two is we're giving it to Fannie McNutt. So let's put step two aside. If they didn't give it to Buddy Slade for – and I don't know what the reason is – for whatever reason that was opportunistic or not consistent with the reasonable expectations, it's conceivable that even had it gone to a third party, that there would still be a violation of the covenant. But I haven't really thought that much about it because our story fits in a little bit clearly. So I am expecting, if we're entitled to take discovery, to maybe find that, in fact, there is a relationship between both where it wasn't going and where it did end up going, not that they were two random independent events. And with that, I will pause, if I haven't used up all of my time, and turn the floor to opposing counsel. All right. Well, you certainly have some time left for rebuttal. Any other questions? Good afternoon, Your Honors. May it please the Court. Your Honors, under Illinois law, the covenant of good faith and fair dealing – Say your name, please, because it's being recorded. Sure. Cora Hickman on behalf of Allstate Insurance Company. Your Honors, under Illinois law, the covenant of good faith and fair dealing generally is not an additional source of liability in addition to the contract terms. It's normally a construction aid in assisting a court to interpret conflicting provisions or ambiguous provisions. As counsel stated, the issue here is that under certain circumstances where a party has discretion under a contract, that the implied covenant of good faith and fair dealing may become a source of liability where that party has abused its discretion. Well, how would they ever know whether the discretion has been abused if they don't get discovery? Your Honor, that's a good question. And to quote some cases, some Illinois cases, a breach of the violation of good faith and fair dealing occurs where that party exercises its discretion in a manner contrary to or inconsistent with the reasonable expectation of the parties or put another way, or taking advantage of the other party. The implied covenant protects against a party with contractual discretion from taking advantage of the other party in a way that could not have been contemplated at the time the contract was drafted. That's right. That's what your comment says. And my question is, how would we ever know whether that is in fact what happened unless the other side had a chance to question all the actors, the players, and find out what were the underpinnings of the decision-making that led to awarding the Book of Business to Faye McKnight? Sure. And to answer that question here is the provisions of the contract grant all State, as Your Honor stated before, the absolute right to either approve or disapprove a proposed transfer of the business, and in addition, the E.A. manual provides that all State will not approve the transfer of any shares or interest in the agency. You didn't answer my question. I'd like you to answer my question if you would. Sure. My answer is that discovery is not necessary to get to that point, which the trial court stated was something that she determined as a matter of law, because under these provisions that I'm reading into the record, there's no possibility that the plaintiff could prove that her husband, if she ever had a reasonable expectation of her Book of Business, being accepted by all State to transfer to her husband. Notwithstanding that there's language in there that says, in instances where the proposed transferee is a spouse or other family member of the agent, the company will consider making an exception to the above limitations based on the facts and circumstances presented. Using that language, couldn't you say that there's a reasonable expectation that she couldn't expect that the business would be transferred to her husband who had a demonstrated record of running a successful agency? I mean, why would it be unreasonable for her to expect that, given that language? That language creates a possibility of that occurring, but it does not create a reasonable expectation. Why not? And that's especially true because the contract. Now, why wouldn't it create a reasonable expectation? It doesn't create a reasonable expectation because the contract language earlier also states that all State will not generally accept a transfer to an independent all State agent, and there's nothing. So in other words, you're saying that the contract, the language in the contract is in conflict. The earlier language is somewhat in conflict with this one, so we should accept the earlier language, although all State broke the contract. Is that what you're saying? No, Your Honor. What I'm saying is that that provision really opens the door to that possibility that under certain circumstances, under certain facts and circumstances, that a family member may be considered. But that falls well short of creating a reasonable expectation, and that's because of the prior language. And in addition, there's nothing later in the contract or. . . Why does the prior language negate this language? Is it in conflict? It's not in conflict. It's stating the prior language states the general rule that an independent all State agent will not be accepted for a transfer following termination of an exclusive agent. So is the second language superfluous? Does it mean anything? What's the meaning of it? It creates an exception that in very limited circumstances, all State might consider making a transfer of an exclusive agency to a family member under limited circumstances. Well, this brings me back to my original question. Without discovery, how would they know whether this circumstance was one of the limited circumstances if you're referring to it or not? How would they know that? I don't believe that discovery is necessary. That language creates a reasonable. . . It creates a potential expectation, but it does not create a reasonable expectation. Okay, let's move on because we're going round and round. You're not answering my question, counsel. So as I was stating, Clayton's proposed transfer here was to her husband who was an independent all State agent and was therefore under the provisions that I just stated not qualified other than the possibility under the exception. He was therefore not qualified to even receive the book of business under the all State EAA agreement. And so all State's conduct at the very least was within the bounds of contractual discretion that was afforded to it by the contract. Well, here we're only at the pleading stage, right? We only need to determine whether or not the complaint sufficiently showed that the plaintiff alleged that all State's decision was arbitrary, capricious, or contrary to the expectation of the parties. So don't you think the court kind of short circuited the plaintiff here? She should have been entitled to a hearing. I don't for a couple of reasons. And the first reason that all State's is what I had said before, and that's the trial court determined that she could make that determination as a matter of law based on the contract language that A, granted all State discretion in its exclusive judgment to either approve or deny the transfer, and the language in the EAA manual that states that all State's will not approve a transfer to an all State independent agent. And secondly, the second issue that ties into that question is, Thomas mentioned in her brief and during argument today that there's part A of the discretion, which is all State exercising it to deny the proposed transfer to Buddy Slay, the plaintiff's husband, and then there's part B, which is their decision to transfer the policies to Faye McNutt, the preexisting all State agent, afterwards. And I think that really confuses what's truly at issue in this case, because what's truly at issue is all State's exercise of its contractual discretion as to denying the transfer to plaintiff's proposed transferee, her husband. It has nothing to do with who they decide after the fact to transfer those policies to. The contract language is clear that all State at all times has owned those policies, and all State has the right to make business decisions with those policies and decide who they're going to go to after the fact. Let me ask you, does all State have an inherent duty to exercise its discretion in good faith? Implied covenant of good faith and fair dealing is implied into this contract, correct. And how would we know whether the discretion was exercised in good faith in the spirit of fair dealing without a hearing? All State would have had to do something. It would have been alleged in the complaint that all State did something that was beyond the reasonable expectations of the parties. They alleged that all State awarded it to the manager's spouse when Mary Slade's spouse had a similar, if not a better, track record of experience. So I mean, they certainly alleged enough. They alleged that it's a reasonable expectation, but as the trial court found, under the applicable contract language, it was not a reasonable expectation under that particular language. And I'm going to cite a case that the trial court cited in their ruling, the Dionne v. McDonald's case 125-113-972, which provided in a good faith and fair dealing case, quote, motive is irrelevant where good cause determination exists. That case was in the context of determination of a franchising agreement, but its logic is analogous to this case. All State's motive in doing what it did, whether or not plaintiff has facts to show that the purpose of their decision-making was to transfer this book of business to Faye McKnight, whether or not plaintiff has those facts is irrelevant, because under the terms of the contract, All State had good cause to make the decision that it did. It had the absolute right and absolute discretion to either approve or deny a transfer, and the E.A. manual provides that generally transfers are not accepted to an independent All State agent. And so the contract language accepts. But how do you get around the language about spouses, though, that an exception will be made for spouses? If that language totally superfluous, does it mean nothing? What does that language mean? It means something. It's a very limited exception to the general rule that — And what is that limited exception? That limited exception — I mean, the contract doesn't define what those facts and circumstances are, where that exception would be applied. It states that in certain circumstances, subject to the general rule, that generally All State will not transfer to an independent All State agent, that there is a possibility that a spouse would be accepted for a transfer of a book of business. But the fact that it's an exception in and of itself shows that the contract contemplates the situation where a family member would not be accepted for that transfer. And so any expectation by the plaintiff that her husband would definitely or probably be accepted for the proposed transfer after termination is not a reasonable expectation under the contract. So Murage talked a little bit about the Burrill case and the McCleary case during plaintiff's arguments. And I think these cases are a very good illustration of why the implied government of good faith and fair dealing does not apply in this case. As counsel stated, in Burrill, the contract provider, All State, had the right to make any changes in the terms and conditions of employment as All State deemed necessary and appropriate in furtherance of its business objectives. The plaintiff there alleged that the discretion was abused by All State when it increased her cost of doing business, forcing her out of business and allowing All State to retain the book. And the court in that case granted the motion to dismiss, ruling that the plaintiff understood the discretion afforded to All State under the contract and that her execution of the contract negated any inference that All State's actions were unreasonable and exercised without proper motive. All State exercised its discretion in Burrill to the letter of the contract and to state the court's language, quote, the contract did not lull Burrill into believing that All State might not exercise its discretion as set forth therein. And McCleary is starkly different. In that case, the contract provided a clear bonus structure that the plaintiff would receive a bonus if he worked for three months in the year and met certain performance objectives before he was terminated. The plaintiff did work more than three months in the year, he exceeded his performance objectives, and he was even told at the time of his termination that he would be a part of that bonus pool. After the plaintiff's termination, Wells Fargo then unilaterally changed the bonus structure in order to deprive plaintiff of that bonus. And so the court found that in the McCleary case, the plaintiff had a reasonable expectation of receiving a bonus under the terms of the contract and that Wells Fargo's unilateral changing of the bonus plan could not have been in the contemplation of the parties at the time of contracting. So the difference in these two cases is clear. In Burrill, the plaintiff never had a reasonable expectation that All State would never exercise its discretion under the contract to change the, increase the cost of her doing business. The contract clearly gave All State that right, and as the court said, it did not lull Burrill into believing that All State might not exercise its discretion ever. Whereas in the McCleary case, there was a clear bonus structure, the plaintiff met all the requirements, and Wells Fargo essentially changed the rules after the fact. And again, to borrow that line from the Burrill court, the contract in McCleary lulled the plaintiff into believing that he would receive a bonus based on what he had done before his termination, and Wells Fargo changed the rules after the fact to deprive the plaintiff of that bonus. And this case is much more like Burrill than it is like McCleary. Nowhere in the contract does it say anywhere that there's a presumption that any proposed buyer that plaintiff proposes will somehow be accepted. Nor is there any language in the contract that suggests that a preexisting All State agent, somebody who's run a successful All State agency such as is alleged that Eddie Slate has, would somehow have an advantage or have a high probability of even being accepted. Nowhere in the contract does it say that. There's no allegation that All State ever told anybody that, ever told plaintiffs that her husband would be accepted, and All State never unilaterally changed the terms of the contract after the plaintiff's termination like happened in McCleary. But the contract provides All State has exclusive discretion and the independent agents generally will not be approved. So in fact what happened here, the denial of the transfer to an independent All State agent, is actually what the parties would and should have expected to happen under that plain language of the contract. Another basis for the trial court's ruling in this case was that there was an existence of an alternative payment structure built into the EA manual, and that's called a termination payment. And the termination payment was effectively, plaintiff's economic interest was defined as two things. It's either the opportunity to sell your book of business, subject to All State's exclusive discretion, or the right to receive a termination payment if you do not sell your book of business within that time frame. So first off, the fact that this termination payment provision even exists within the contract, again, it shows that at the time of contracting, the parties contemplated the possibility that a proposed buyer would not be accepted. And so that again goes against the plaintiff's contention that she had a reasonable expectation that her husband would definitely be approved under this, if she proposed him. But secondly, the court effectively found that, the trial court effectively found that the acceptance of this termination payment was, for lack of a better word, a waiver of plaintiff's ability to seek the damages that she seeks in this case. Plaintiffs argued that she took the $40,000, but she never accepted that $40,000 in lieu of seeking the legal remedies that she seeks before this court today. But there's nothing in the record to support this. There's nothing in the record to support that the plaintiff did anything other than take the $40,000, cash the check, there's no allegation that she returned the money, or otherwise put All State on notice that she was reserving her rights to seek legal remedies. And she always had those legal remedies available to her, but instead she cashed the check and she waited almost five years now to file this lawsuit. So this isn't a situation where the plaintiff is simply, you know, she's not receiving anything. The contract had two possibilities. You either sell your book of business subject to our discretion, or you receive the termination payment. And she received the termination payment, she cashed the check, and so she's been compensated pursuant to the contract. Let me ask you to bring your remarks to a close. You've got about two minutes left. Sure. For the reasons I have stated on the record, I think the trial court's ruling should be affirmed. Thank you. Thank you, Mr. Hickman. Mr. Rosenstein, rebuttal. I will be very brief. There were just three small points I wanted to raise. One, I made a misstatement. The court asked me to discuss the Burrill case, and I said in the Burrill case it was decided on the motion to dismiss, and there had been some discovery that was allowed before the motion. The reason why I couldn't find it, the case where there was some discovery allowed before the motion was ruled on, was, in fact, the McCleary case. So I got the two confused. In case anybody's checking on the McCleary's case, it's in paragraph three. In the Burrill case, there was no discovery. That was my first comment. Second, opposing counsel mentioned the Dionne case as a basis that the first. . . I thought that's Burrill. Why isn't this case just like Burrill? For the reason that I explained before, the Burrill case, her complaint was that her agency should not have been terminated. Why? Because she said although she was losing money, the reasons that she was losing money were excusable. There wasn't issue of the discretion, meaning that there wasn't any assertion by the plaintiff that Allstate had an obligation to continually keep her as its agent for so long as she was losing money. So that case is actually not in point because where the issue arose was at a distinguishable event. Regarding the Dionne case, which opposing counsel cited regarding motive and whether or not cause exists, Dionne was after a bench trial, which fits into what the court's question is. Where did Dionne get to the finish line? Just like in McCleary, there was a discovery that was taken. So the Dionne, we're not disputing the non-Dionne, but it's not fair. It's not even a summary judgment case. There literally was a bench trial in that case. And so unless the court has any questions for the reasons previously argued and in the briefs, we will thank the court for its time. Thank you, counsel. The case will be taken under advisement.